# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| DESIGN GAPS, INC., and<br>DAVID GLOVER, Individually and Owner<br>of Design Gaps, Inc. | ) ) ) ) | Civil Action No. 3:25-cv-604 |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **PLAINTIFFS' MEMORANDUM IN<br>OPPOSITION TO DEFENDANTS'<br>JOINT MOTION TO DISMISS** |
| DAVIDE OLIVIERI, Individually and Agent<br>of DD Luxe Design, LLC,<br>DORIANA DURAZZO, Individually and Agent<br>of DD Luxe Design, LLC,<br>DD LUXE DESIGN, LLC,<br>ANTHONY J. DE PIANTE,<br>LESLY K. DE PIANTE,<br>ANDREW LINEBERGER BUILDERS,<br>ANDREW LINEBERGER, Individually and<br>Owner of Andrew Lineburger Builders,<br>HARDWOOD CREATIONS, INC., and<br>DAVID ANTHES, Individually and President<br>of Hardwood Creations, Inc. | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |

Plaintiffs Design Gaps, Inc. and David Glover (individually referred to as "Design Gaps" and "Defendant Glover," respectively, and collectively referred to as "Plaintiffs"), by and through undersigned counsel, hereby file this Memorandum in Opposition to Defendants' Joint Motion to Dismiss submitted by Defendants Davide Olivieri, Doriana Durazzo, and DD Luxe Design, LLC (individually referred to as "Defendant Olivieri," "Defendant Durazzo" and "DD Luxe Design," respectively, and collectively referred to as the "DD Luxe Design Defendants"); Anthony J. De Piante and Lesley K. De Piante (individually referred to as "Defendant Anthony De Piante" and' Defendant Lesly De Piante," respectively, and collectively referred to as the "De Piante

Defendants"), Andrew Lineberger Builders and Andrew Lineberger (individually referred to as "Lineberger Builders" and Defendant Lineberger," respectively, and collectively referred to as the "Lineberger Builders Defendants") and Hardwood Creations, Inc. and David Anthes (individually referred to as "Hardwood Creations" and "Defendant Anthes," respectively, and collectively referred to as the "Hardwood Creations Defendants"). Each of the named defendants are jointly referred to as the "Joint Defendants."

## RELEVANT FACTUAL BACKGROUND

The De Piante Defendants entered into a service agreement with the DD Luxe Design Defendants to provide "interior luxury design" for certain areas of the residence being constructed for the De Piante Defendants ("De Piante Residence") including the great room, kitchen/mudroom/scullery, bathrooms throughout the residence, and the master bedroom and closet. Upon information and belief, in association with the design work DD Luxe Design was performing under the service agreement for the De Piante Defendants, Defendant Olivieri arranged a meeting with Plaintiff Glover to discuss designs for the cabinetry at the De Piante Residence. Plaintiff Glover issued to the DD Luxe Design Defendants estimates for varying versions of the proposals as requested by the DD Luxe Design Defendants that also included design renderings of certain features that had the aesthetic design elements of the proposals that Plaintiffs proposed to the DD Luxe Design Defendants. The first set of contract proposals were issued on June 15, 2023, to the DD Luxe Design Defendants and included several contract proposals for the kitchen, scullery, and mudroom that also included a design rendering and other contract proposals for the great room, study, master bath, laundry, recreation room, powder bathroom, guest bathroom, pool bathroom, and three other bathrooms for the De Piante Residence. Each of the contracts included the following statement on the front page in capital letters: "ALL DESIGNS CREATED REMAIN

2

THE SOLE PROPERTY OF DESIGN GAPS, INC. AND MAY NOT BE REPRODUCED IN WHOLE OR IN PART WITHOUT THE WRITTEN CONSENT OF DESIGN GAPS, INC."

Based upon certain adaptations the DD Luxe Design Defendants had with respect to the work to be performed at the De Piante Residence, Plaintiffs provided to DD Luxe Design revised quotations and a set of renderings of the proposed designs for the kitchen, scullery and mudroom (also including three dimensional views); great room; master bath; study; powder bathroom, guest bathroom; pool bathroom and laundry; recreation room; and three additional bathrooms. The revised contracts included the ownership statement on the front page of the contracts as discussed above.

The DD Luxe Design Defendants arranged a presentation for July 5, 2023, at Plaintiffs' showroom in Charlotte, North Carolina at the time allowing the De Piante Defendants to also review the designs that Plaintiffs provided for and ask questions concerning the cabinetry at the De Piante Residence. Following these presentations and the proposal revisions to the contracts provided by the Plaintiffs as requested by the DD Luxe Design Defendants following the meeting, Plaintiffs had not heard anything further concerning the use of the designs they had developed and provided for the De Piante Residence. Plaintiff Glover followed up with Defendant Olivieri on October 30, 2023, by email inquiring into the status of the project. Defendant Olivieri responded on November 2, 2023, indicating that "[t]he client is still searching around and we are on hold as well." On November 3, 2023, Plaintiff Glover sent Defendant Olivieri an email reminding him that "[y]ou and your clients do know our designs and drawings cannot be retransmitted, copied, or used to shop the cabinetry without written approval by us and compensation." While Plaintiff Glover did not hear from Defendant Olivieri again following this communication, it is clear from the responses to the interrogatories, production, and Defendant Olivieri's deposition that sometime

3

in what appears to be September or early October 2023, the DD Luxe Design Defendants had provided final design proposals that included Plaintiffs' renderings having the DD Luxe Design logo that replaced the indication that the drawings were developed by Design Gaps. On October 2, 2023, Defendant Anthony De Piante indicated in an email to the DD Luxe Design Defendants that he had given Hardwood Creations "our plans and the renderings you created" (indicating that Defendant Olivieri had developed the renderings). Therefore, notwithstanding the misrepresentation that Defendant Olivieri made to Plaintiff Glover on November 2, 2023, it had already been well-established that a decision had been made concerning who would provide the cabinetry for the De Piante Residence whereby such cabinetry included Plaintiffs' architectural works ("Plaintiffs' Architectural Works").

Upon information and belief that the DD Luxe Design Defendants and the De Piante Defendants adopted and the Hardwood Creation Defendants and Lineberger Builder Defendants designed and/or constructed infringing cabinetry at the De Piante Residence, Plaintiffs decided to file the captioned lawsuit having copyright infringement claims asserted against each of the Defendatns. Plaintiffs had based this conclusion on the fact that DD Luxe Design Defendants and the De Piante Defendants had a strong interest in the aesthetically pleasing aspects of Plaintiffs' Architectural Works, and the Hardwood Creations Defendants and Lineberger Builder Defendants had an interest in earnings based upon the use of the infringing designs included in the cabinetry for the De Piante Residence.

**LEGAL STANDARD**

"There exist two strands of standing: Article III standing, which ensures that a suit presents a case or controversy as required by the Constitution, and 'prudential standing,' which encompasses 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Doe v. Va.*

4

*Dep't of State Police*, 713 F.3d 745, 753 (4th Cir. 2013) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "To satisfy the 'irreducible constitutional minimum of standing[,] ... [a] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (internal quotation marks omitted)). "[P]rudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Elk Grove Unified Sch. Dist. v. Newdow*. 542 U.S. 1, 12, 124 S.Ct. 2301, 149 L.Ed.2d 98 (2004).

When standing is challenged on the pleadings, the court "accept[s] as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181–82 (4th Cir. 2013) (internal quotation marks omitted) (quoted in *Deal*, 911 F.3d at 187). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992).

The failure to provide arguments that do not address the court's subject matter jurisdiction with respect to certain claims does not provide the court with sufficient information to determine whether a court has authority to adjudicate the case. See *Bloosurf, LLC v. T-Mobile USA, Inc.*, 170 F.4th 264 (4th Cir. 2026). "Properly understood, subject matter jurisdiction refers to a court's

'authority to adjudicate the cause,' rather than whether a plaintiff has a valid cause of action or a defendant has a meritorious defense." *Id.*, 2026 U.S. App. LEXIS 8152 *4 (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007)).

## ARGUMENT

Joint Defendants argue that Plaintiff Glover is not the owner of any United States Copyright Registration and Design Gaps does not have a valid registration for an Architectural Work. First, even though Plaintiff Glover was the author of the work who eventually transferred ownership of the housing designs to his company Design Gaps, he continues to have redressable claims against the Defendants based upon breach of the implied contract including use of the drawings that he assembled and unjust enrichment claims against the Joint Defendants. Furthermore, as further argued below, Joint Defendants have an improper interpretation of what should be characterized as an architectural work that is subject to copyright protection. Certainly, as further argued below, Joint Defendants interpretation does not comport with the Architectural Works Protection Act ("AWCPA") and Fourth Circuit precedent.

As further argued below, in contravention of the Joint Defendants' allegations, Plaintiffs' claims in this lawsuit do have a justiciable basis in law and (1) Plaintiffs have suffered an injury in fact, (2) the injury in fact is fairly traceable to the challenged conduct of the Joint Defendants, and (3) Plaintiffs' losses can be redressed by a favorable judicial decision. Therefore, Joint Defendants' Motion to Dismiss should be denied.

I.  **JOINT DEFENDANTS' FAIL TO ADDRESS EACH OF THE CAUSE OF ACTIONS IDENTIFIED IN THE FIRST AMENDED COMPLAINT**

In addition to the copyright infringement claims directed to Plaintiffs' Architectural Works as further address below, Plaintiffs also allege and have asserted facts in support of a breach of implied contract ("Fourth Cause of Action") and unjust enrichment ("Fifth Cause of Action") in

6

the First Amended Complaint that is before the Court. Joint Defendants have not asserted any arguments that show these claims do not cause Plaintiffs to suffer an injury in fact, such injury is not traceable to the Joint Defendants, and Plaintiff's losses cannot be redressed by a favorable judicial decision. For these reasons, at least with respect to the fourth and fifth causes of action, Plaintiffs captioned litigation should not be dismissed. Additionally, since Plaintiff Glover has pled the damages that he has suffered pursuant to these causes of actions, he should be allowed to remain a Plaintiff in this litigation. *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 612 (4th Cir. 2021).

## II. PLAINTIFFS HAVE PROPERLY ASSERTED COPYRIGHT CLAIMS IN THE FIRST AMENDED COMPLAINT

As further argued herein, Joint Defendants fail to make a credible argument in support of showing that Plaintiffs do not hold a valid copyright in plans that are architectural works for reasons that Joint Defendants' arguments are not compatible with the AWCPA requirements in finding what constitutes an architectural work. Plaintiffs' copyright registration is properly characterized as an architectural work, and Plaintiff's Architectural Works cannot be considered a derivative work of the floor plans of the De Piante Residence as the Joint Defendants otherwise argue without proper support.

### A. Joint Defendants' Arguments are in Contravention to the Statutory Definition of an Architectural Work

#### 1. Joint Defendants Mischaracterize 37 C.F.R. §202.11 by Insisting that Only Humanly Habitable Structures Are Subject to Protection as an Architectural Work

Statutory language provides that a protected architectural work "includes the overall form as well as the arrangement and composition of spaces and elements in the design but does not include individual standard features." 17 U.S.C. § 101. Joint Defendants argue in support of their

premise that Plaintiffs' works are not subject to copyright protection as architectural works since the cabinetry is not "a humanly habitable structure … such as a house or office building" as Joint Defendants argue is *required* by 37 C.F.R. § 202.11 (emphasis provided). However, such an argument contradicts the statutory premise that a protected architectural work also encompasses "the arrangement and composition of spaces and elements in the design" of which cabinetry is one or a collection of those spaces and elements in the design of a house. This is further supported by the Congressional intent that interior architecture may be protected as an architectural work under AWCPA. See *Bldg. Graphics, Inc. v. Lennar Corp.*, 866 F. Supp. 2d 530, 538 (W.D.N.C. 2011) (citing H.R. Rep. No. 101-375 (1990)); *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 100 (1st Cir. 2006) (citing H.R. Rep. No. 101-735, reprinted in 1990 U.S.C.C.A.N. at 6949). Plaintiffs' expert witness has also declared that cabinetry is interior architecture and fits within "the arrangement and composition of spaces and elements in the design" of a house or building. Declaration of Moodye Clary ("Clary Declaration") included as Exhibit 1, ¶ 9.

Plaintiffs believe that 37 C.F.R. §202.11 is directed to identifying only the types of structures that may be subject to protection as an architectural work. This is confirmed by the Federal Circuit Court of Appeals in their statement that this applicable regulation defines buildings as "humanly habitable structures that are intended to be both permanent and stationary, such as houses and office buildings, and other permanent and stationary structures designed for human occupancy, including but not limited to churches, museums, gazebos, and garden pavilions." *Gaylord v. United States*, 595 F.3d 1364, 1381 (Fed. Cir. 2010) (citing 37 C.F.R. § 202.11(b)(2)). The definition expressly excludes "[s]tructures other than buildings, such as bridges, cloverleafs, dams, walkways, tents, recreational vehicles, mobile homes, and boats." *Id.* (citing 37 C.F.R. § 202.11(d)(1)).

8

Indeed, even if there was a conflict between 17 U.S.C. § 101 and 37 C.F.R. § 202.11, the Fourth Circuit accepts the Supreme Court guidance that the Court will only "defer to an agency's interpretation of a statute when (1) the statute is ambiguous and (2) the agency's interpretation is reasonable." *Amaya v. Power Design, Inc.*, 833 F.3d 440, 448 (4th Cir. 2016) (quoting *Chevron U.S.A. Inc. v NRDC*, 467 U.S. 837, 842-44, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)). Joint Defendants have not identified any ambiguity in the AWCPA in support of only relying upon 37 C.F.R. § 202.11 over the definition of architectural work provided in 17 U.S.C. § 101 as encompassing "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings" whereby such "work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." For example, the Fourth Circuit has considered the following types of elements as being encompassed by overall form as well as the arrangement and composition of spaces and elements in the design: a high-rise residential building; two elevator cores connected by a fire or service corridor; direct access from the residential units to an elevator lobby; a barbell-shaped floor plan; a mechanical/electrical room space at one end of the service corridor and a trash chute at the other end; exit stairwells adjacent to the elevators; corner units with diagonal entry access; alternating vertical elements; and projecting elements at the cornice of the roof line. *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc*, 790 F.3d 532, 542 n. 8 (4th Cir. 2015) ("the nine features, when viewed in isolation, are not extrinsically similar in the two designs") (referencing *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 43 F. Supp. 3d 644, 666 (E.D.VA 2014)). Notably, the Fourth Circuit did not dismiss these elements, many of which are arguably not intended to be humanly habitable structures (elevator cores, fire or service corridor, elevator lobby, mechanical/electrical room space, trash chute, stairwells, *etc.*)

9

as not being subject to copyright protection as an architectural work. Rather, similar to cabinetry, they are elements associated with a building and not the building itself that could be subject to copyright protection as an architectural work if they held the aesthetically pleasing qualities apart from the nature of their functionality or if in combination they led to a design that had not previously existed.

In addition to the Fourth Circuit's position, other Appellate Courts have commonly sided with the interpretation of a statutory reference. *Koch Indus. v. United States*, 603 F.3d 816, 821 (10th Cir. 2010) ("as with all regulations, the Code's implementing regulations 'must be interpreted so as to harmonize with and further and not to conflict with the objective of the statute'") (citing *Joy Techs., Inc. v Sec'y of Labor*, 99 F.3d 991, 996 (10th Cir. 1996)); *Roy v. Canadian Pac. Ry. Co.*, 999 F.3d 72, 82 (1st Cir. 2021) (any conflict between a statutory provision and the Bankruptcy Rules would have to be resolved in favor of the former). Therefore, while Plaintiffs do not believe a conflict exists between the regulation and regulation, even if a conflict existed between 17 U.S.C. § 101 and 37 C.F.R. § 202.11, it would be resolved in favor of the statutory provision.

In the present case, interpretation of the protections provided by AWCPA are clear. Adoption of the Joint Defendants' argument that only the guidance of 37 C.F.R. § 202.11 should be followed severely reduces the applicability of the AWCPA particularly with respect to the arrangement and composition of spaces and elements in the design and interior architecture as Congress expressed should also be included and the Fourth Circuit has embraced in many of their decisions. Since cabinetry is encompassed in this broader interpretation of AWCPA, Plaintiffs have properly registered and have copyright protection in the architectural works that are the subject of the captioned lawsuit.

10

### 2. Plaintiffs' Copyright Registration Is Properly Characterized as an Architectural Work

The AWCPA protects an architectural work that is "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." 17 U.S.C. § 101. "[T]he work includes the overall form as well as the arrangement and composition of spaces and elements in the design but does not include individual standard features." *Humphreys*, 790 F.3d at 537 (citing 17 U.S.C. § 101). Legislative history "discloses that such 'individual standard features' include 'common windows, doors, and other staple building components.'" *Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 919 (11th Cir. 2008) (quoting H.R. Rep. No. 101-735, as reprinted in 1990 U.S.C.C.A.N. 6935, 6949). In addition to individual standard features, "'[s]tandard configuration spaces' … are not copyrightable." *Zitz v. Pereira*, 119 F. Supp. 2d 133, 147 (E.D.N.Y. 1999) (quoting 37 C.F.R. § 202.11(d)(2)).

"[A]lthough the unoriginal components of a work are not subject to copyright protection; the independent selection and arrangement of these parts may be original and therefore copyrightable—as is the case with compilations." *Bldg. Graphics*, 866 F. Supp. 2d at 538 (citing *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 438 (4th Cir. 1986) (quoting *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 387-88 (5th Cir. 1984))).

> The phrase "arrangement and composition of spaces and elements" recognizes that: (1) creativity in architecture frequently takes the form of a selection, coordination, or arrangement of unprotectible elements into an original, protectible whole; (2) an architect may incorporate new, protectible design elements into otherwise standard, unprotectible building features; and (3) interior architecture may be protected.

*Id.* (citing H.R. Rep. No. 101-375 (1990)). Clearly, in adopting AWCPA, Congress intended that interior architecture elements should be subject to copyright protection as well. "[W]hile individual standard features and architectural elements classifiable as ideas or concepts are not themselves

copyrightable, an architect's original combination or arrangement of such elements may be." *Intervest*, 554 F.3d at 919 (citing *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1251 (11th Cir. 2007)).

Substantial similarity is a two-pronged test where Plaintiff must show the two works are (1) extrinsically similar because they contain substantially similar ideas that are subject to copyright protection and (2) intrinsically similar in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work. *Humphreys*, 790 F.3d at 538 (the Fourth Circuit's "two-part substantial similarity test governs claims of architectural infringement."). "The extrinsic inquiry is an objective one, looking to specific and external criteria of substantial similarity between the original elements (and only the original elements) of a protected work and an alleged copy." *Copeland v. Bieber*, 789 F.3d 484, 489 (4th Cir. 2015) (citing *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 435-37 (4th Cir. 2010)). Because the inquiry is objective, expert testimony will often be relevant. *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996) ("[A] plaintiff must show—typically with the aid of expert testimony—that the works in question are extrinsically similar because they contain substantially similar ideas that are subject to copyright protection."). Since the inquiry is focused on the original elements of a copyrighted work, a court examining extrinsic similarity must first engage in a process called "analytic dissection," where those parts of the work that are original and protected are separated from those that are not. *Universal Furniture*, 618 F.3d at 436-37. Indeed, when assessing whether a court has subject-matter jurisdiction, the court "may consider authentic, extrinsic evidence that is integral to the complaint, as well as matters of public record." *Episcopal Church v. Church Ins. Co.*, 997 F.3d 149, 155 (4th Cir. 2021) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

In the captioned case, Plaintiffs have engaged an expert witness who was timely introduced to Defendants through service of Plaintiffs' Designation of Expert Witness and Expert Report on March 31, 2026. Previously referenced above as the Clary Declaration included as Exhibit 1. Plaintiffs' expert witness is a licensed architect who has analytically dissected and identified the copyrightable elements that are encompassed in Plaintiffs' Architectural Works. He has identified the following artistic or aesthetic features that are physically or conceptually separable from the utilitarian dimension of the works and subject to copyright protection:

- Thickened arched walls separating the desk and scullery area from the kitchen create a visual columnar effect on the hood/range wall of the kitchen.
- The design of the walls contributes to the apparent weight and balance given the substantial metal doors of the design.
- Sheetrock ceiling beams create a termination point for the ceiling treatments for the two flanking barrel-vaulted ceilings accentuating the range and hood to create a visual affect that ties the planned structures into the thickened sheetrock columns giving meaning to their existence.
- Faux thicken sheetrock columns, while not structurally necessary, were added to delineate and well define the refrigeration/pantry wall of the cabinetry from the adjacent bar/serving area while appearing to carry the ceiling beams thus placing a visual emphasis on the adjacent custom cabinetry.
- The columns create visually appealing termination points for the ceiling treatments and the two flanking barrel-vaulted ceilings that accentuate the range and hood of the kitchen.
- The radius topped decorative metal frame glass doors capitalize on the appearance of the barrel vault design flanking the range wall.
- The use of the minimalistic flush door styles of the cabinetry necessitated the other non-functional additional elements such as the thickened end panels and architectural reveals as design elements adding to the visual balance and proportion of design.
- The walls have been sized and proximately positioned to allow them to open to the scullery and home desk area to avoid their protrusion into the walkway of those spaces creating a more visually appealing entranceway.
- Thick floating shelving was utilized in the home desk area of the mudroom adjacent to the scullery in lieu of expected closed door wall cabinets that provide less visual appeal with the use of bulky wall units. The desk area itself was designed to properly align with the decorative metal door in lieu of the original off-centered

13

layout originally included in the plans. This create the feeling good "all is well" with the design universe of alignment.

- The same may be said of the centering of the added wall oven unit in the scullery perfectly aligning with the opposing decorative metal doorway.
- The dining server/bar contains unexpected floating base units with sink and bottle storage integrated between two tall cabinets adding to the uniqueness of the bar design.

Clary Declaration, ¶ 10. Mr. Clary further declares that "[w]hen these identified elements are included in the cabinetry design for the house, whereby such cabinetry is an interior architectural arrangement, the combination represents an architectural work that is subject to copyright protection." Clary Declaration, ¶ 12.

Joint Defendants have chosen not to engage an expert witness to provide testimony that would be contrary to this testimony that Plaintiffs' expert witness has provided. Therefore, these findings by Plaintiffs' expert witness further supports Plaintiffs' argument that the architectural works developed by Plaintiffs are subject to copyright protection and the use of any such designs by the Joint Defendants constitutes copyright infringement.

### 3. The House Plans for the De Piante Residence Only Include a Collection of Individual Standard Features that Are Not Subject to Copyright Protection

The Clary analysis of the house plans initially provided to Plaintiff Glover by the DD Luxe Design Defendants only includes a collection of individual standard features whose selection, coordination, or arrangement when put together as a whole does not constitute a protectible work. Clary Declaration, ¶ 11. The limitation placed on the scope of copyright protection afforded to architectural works by the last clause in the definition—that protection does not extend to "individual standard features"—evolves from the constitutional requirement that copyright protection may only extend to original works or the subparts of works that are original, see *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 347, 111 S. Ct. 1282, 113 L. Ed. 2d 358

14

(1991). The plans provided to Plaintiffs only included individual standard features that were directed to the functionality of the home. They certainly did not encompass artistic or aesthetic features that were physically or conceptually separable from the utilitarian dimension of the plans that were original in nature.

While Joint Defendants allege that Plaintiffs' Architectural Works are a derivative work of such plans, they fail to establish whether the alleged preexisting work was recast, transformed, or adapted, which is requisite in characterizing the work as a derivative work. *Kramer*, 783 F.2d at 437 n. 16. Joint Defendants have not engaged an expert witness to analytically dissect and to separate out and identify any parts of the plans that are original and protectable. Additionally, the "preexisting work must come within the general subject matter of copyright set forth in section 102." *Id*. Since such plans only encompass individual standard features and functionality in use, they do not appear to be matter that is subject to copyright protection set forth in section 102 of the Copyright Act. Furthermore, copyright in a derivative work does not in any way render the alleged preexisting work that is in the public domain protectible. *Id.* at 437. Joint Defendants merely allege Plaintiffs' Architectural Works are derivative works of such floor plans without providing the testimonial support needed to show the floor plans (1) are an architectural work and (2) such work is subject to copyright protection. Joint Defendants lack the analysis and precedential support in their joint motion to dismiss to characterize Plaintiffs' Architectural Works as a derivative work of the house floor plans that DD Luxe Design had provided to Plaintiff Glover.

## CONCLUSION

Plaintiffs have demonstrated that their cause of actions based upon copyright infringement, breach of implied contract, and unjust enrichment alleged against the Joint Defendants are actionable claims whereby Plaintiffs' have (1) suffered an injury in fact, (2) that is fairly traceable

to the challenged conduct of the defendants, and (3) that is likely to be redressed by a favorable judicial decision. Defendants have failed to provide any arguments in support of why the Court does not have subject matter jurisdiction over the breach of implied contract and unjust enrichment causes of action. Furthermore, for the reasons provided in this memorandum, Plaintiffs' copyright protections in architectural works are consistent with the requirements of AWCPA. Therefore, Plaintiffs request that the Joint Motion to Dismiss submitted by the Joint Defendants be denied.

This 12th day of May, 2026,

Respectfully Submitted,

Design Gaps, Inc. and David Glover
By counsel

By: s/Todd M. Hess
    Todd M. Hess (Federal ID No. 12925)
    Hess Law, PLLC
    308 Givens Street
    Waxhaw, NC 28173
    Telephone: (980) 213-6929
    Fax: (980) 300-0089
    toddhess@biziplaw.com
    *Attorney for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 12, 2026, the foregoing PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record who have consented to accept service by electronic means.

By: s/Todd M. Hess
Todd M. Hess (Federal ID No. 12925)
Hess Law, PLLC
308 Givens Street
Waxhaw, NC 28173
Telephone: (980) 213-6929
Fax: (980) 300-0089
toddhess@biziplaw.com
*Attorney for Plaintiffs*